# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------------- x
                                                               :
LIBERTY MUTUAL INSURANCE COMPANY,                              :
                                                               :   ECF DOCUMENT
                              Plaintiff,                       :
                                                               :
          -against-                                            :   Civil Action No. _____
                                                               :
WESTPORT INSURANCE COMPANY,                                    :
                                                               :
                              Defendant.                       :
                                                               :
-------------------------------------------------------------- x
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual"), by and through its undersigned attorneys, Wollmuth Maher & Deutsch LLP, for its Complaint against defendant Westport Insurance Company ("Westport") alleges, upon knowledge as to itself and its own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.  This action seeks damages and other relief in connection with Wesport's failure to pay amounts due in accordance with certain facultative reinsurance agreements between Liberty Mutual and Employers Reinsurance Corporation ("Employers"); in or around 2008, Employers merged into Westport. Under these reinsurance agreements, Employers agreed to indemnify Liberty Mutual for payments made by Liberty Mutual and related defense costs pursuant to certain underlying insurance policies that Liberty Mutual issued to its insured, Airco, Inc., and its insured's affiliates (collectively, "Airco").

2.     Although Liberty Mutual paid significant reinsurance premiums to Employers in return for this reinsurance protection, and despite the fact that the reinsurance agreements give rise to legally binding obligations, Westport, as the successor to Employers, has wrongfully refused to pay what is due and owing under these agreements.  Accordingly, Liberty brings this action for breach of contract and declaratory relief in order to recover the damages and other relief to which it is entitled as a result of Westport's conduct.

## THE PARTIES

3.     Plaintiff Liberty Mutual is an insurance company that is organized under the laws of Massachusetts and maintains its principal place of business in Boston, Massachusetts.

4.     Defendant Westport is an insurance company that is organized under the laws of the State of Kansas and maintains its principal place of business in Kansas. Westport is a wholly owned subsidiary of the Swiss Re America Group.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Liberty Mutual and Westport are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over Westport because:  (i) the operative reinsurance agreements were issued in Massachusetts through Thomas E. Sears, a reinsurance intermediary located in Boston, Massachusetts; (ii) Westport has transacted and continues to transact substantial business in Massachusetts; and (iii) Westport is an insurance company licensed by the Massachusetts Department of Insurance.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND

8. Reinsurance is a type of insurance in which an insurer transfers to a reinsurer some or all of the risk that the insurer has assumed under one or more insurance policies. The reinsurer is paid a premium in accordance with the terms of the reinsurance agreement. The original insurer is known as the "cedent" or "ceding insurer" and it is said to "cede" risk, and premium, to the reinsurer. In this case, Liberty Mutual, as cedent, transferred certain risks discussed below to Employers, as reinsurer. When Employers subsequently merged into Westport, these risks were assumed by Westport.

9. The reinsurance that Employers provided to Liberty Mutual is referred to as "facultative reinsurance," which is a type of reinsurance coverage that applies to a single policy or risk and is negotiated on an individual basis.

### The Relevant Agreements

10. Between October 1, 1972 and October 1, 1974, as well as in certain other years not relevant to this dispute, Liberty Mutual and its affiliates issued certain primary insurance policies to Airco (the "Underlying Policies") in the amount of $2 million on a combined single limit and all interests combined basis.

11. In order to reinsure its exposure under the Underlying Policies, Liberty Mutual entered into, among other things, two facultative reinsurance agreements with Employers covering the same time periods as the Underlying Policies: i.e., from October 1, 1972 until October 1, 1974. These reinsurance agreements included: (i) certificate number C 7592, covering the period from October 1, 1972 until October 1, 1973; and (ii) certificate number C 10668, covering the period from October 1, 1973 until October 1, 1974 (collectively, the "Reinsurance Agreements").

12. Under the Reinsurance Agreements, Employers agreed to indemnify Liberty Mutual for a portion of losses and loss expenses that Liberty Mutual incurred under the Underlying Policies.

13. More specifically, in connection with each Underlying Policy, Employers agreed, among other things, to pay a fifty percent share of Liberty Mutual's exposure in excess of $1,000,000 (i.e., $500,000 part of $1,000,000 excess of $1,000,000) also on a combined single limit and all interests combined basis.

14. The Reinsurance Agreements apply "as respects occurrences taking place during the certificate period" and require Employers to "indemnify" Liberty Mutual for losses sustained by Liberty Mutual under the Underlying Policies "in settlement of claims or in satisfaction of awards or judgments" in the proportion set forth above in paragraph 13.

15. The Reinsurance Agreements also require Employers to indemnify Liberty Mutual for "that proportion of claim expenses paid by the Reinsured [i.e., Liberty Mutual] that the amount of the loss ultimately borne by the Corporation [i.e., Employers] bears to the total amount of the loss."

16. The Reinsurance Agreements also provide that "[t]he Corporation shall reimburse the Reinsured or its legal representative promptly for loss against which indemnity is herein provided, upon receipt in the home office of the Corporation of satisfactory evidence of payment of such loss."

17. In exchange for its agreement to reinsure Liberty Mutual in accordance with the terms of the Reinsurance Agreements, Employers accepted substantial premium payments from Liberty Mutual.

### The Underlying Claims

18. Airco was a company that, among other things, sold industrial gases and products that contained asbestos, including welding rods. After various manganese, asbestos, pollution, automobile, and other claims were brought against Airco, it sought coverage for certain of these claims (the "Coverage Claims") under the Underlying Policies issued by Liberty Mutual. In accordance with the terms of the Underlying Policies and/or in conjunction with a 2001 Settlement Agreement (the "Settlement Agreement"), Liberty Mutual made substantial payments to Airco in settlement and/or resolution of the Coverage Claims.

19. In reviewing, considering, evaluating, adjusting, monitoring, analyzing, litigating, and settling the Coverage Claims, Liberty Mutual also sustained significant defense costs.

20. Liberty Mutual has provided Westport with information related to the Settlement Agreement, the Coverage Claims, and the defense costs relating to the Coverage Claims.

### The Reinsurance Billings

21. In or around July 2002, Liberty Mutual submitted a reinsurance billing and proofs of loss to Westport and/or the reinsurance intermediary in the amount of $114,977. Westport and/or its affiliates paid this initial billing in its entirety.

22. On or around November 3, 2008, Liberty Mutual submitted a subsequent reinsurance billing and proofs of loss (the "Cession") to the reinsurance intermediary for distribution to Westport and/or its affiliates. In accordance with the Reinsurance Agreements, the Cession represented an additional share of the losses and loss expenses due from Westport in connection with Liberty Mutual's settlement of the Coverage Claims.

23. During the course of 2009, Liberty Mutual responded to various inquiries from Westport and/or its affiliates regarding the Cession.

24. Despite Liberty Mutual's requests for payment, and the fact that Liberty Mutual has fulfilled all of its obligations under the Reinsurance Agreements, including providing responses to Westport's various queries, Westport has failed to fulfill its obligation under the Reinsurance Agreements to pay the Cession which is due and owing under the terms of the Reinsurance Agreements.

## COUNT I
### (Breach of Contract)

25. Liberty Mutual repeats and realleges the allegations set forth in paragraphs 1 through 24 as though fully set forth herein.

26. Under the Reinsurance Agreements, Westport, as the successor to Employers, has an obligation and a duty to reimburse Liberty Mutual for its share of losses and loss expenses in connection with the Underlying Policies issued to Airco.

27. By failing to pay its share of Liberty Mutual's losses and loss expenses, Westport has breached its obligation and duty to reinsure and indemnify Liberty Mutual, as required by the Reinsurance Agreements.

28. As a result of Liberty Mutual's breach of the Reinsurance Agreements, Westport has suffered damages in the amount of at least $484,196.68 plus interest.

## COUNT II
### (Declaratory Relief)

29. Liberty Mutual repeats and realleges the allegations set forth in paragraphs 1 through 28 as though fully set forth herein.

30. Westport has failed to acknowledge its liability under the Reinsurance Agreements for the losses and loss expenses submitted to it by Liberty Mutual as part of the Cession.

31. There is an actual controversy between Liberty Mutual and Westport as to their respective rights and liabilities under the Reinsurance Agreements.

32. Liberty Mutual is entitled to a declaration, in accordance with 28 U.S.C. § 2201, that the Reinsurance Agreements are in full force and effect and that Westport is obligated to make timely payments to Liberty Mutual in such amounts as have already become due and may become due in the future insofar as additional billings in connection with the Settlement Agreement and/or Coverage Claims are ceded under the Reinsurance Agreements.

WHEREFORE, Plaintiff Liberty Mutual respectfully requests that this Court enter judgment in its favor, and against Westport, as follows:

A. A judgment that Westport has breached the Reinsurance Agreements;

B. Compensatory damages in the total amount of $484,196.68, plus interest;

C. A declaration that Westport must reimburse Liberty Mutual for its share of current and future losses and loss expenses under the Reinsurance Agreements in connection with the Coverage Claims;

D. Reasonable costs and fees incurred in bringing this action; and

E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 9, 2010, New York, New York

Attorneys for Plaintiff Liberty Mutual Insurance Company,

**WOLLMUTH MAHER & DEUTSCH LLP**

By: /S/ William A. Maher
William A. Maher

500 Fifth Avenue
New York, NY 10110
(212) 382-3300

By: /S/ Marc L. Abrams
Marc L. Abrams

500 Fifth Avenue
New York, NY 10110
mabrams@wmd-law.com
(212) 382-3300

**PIERCE, DAVIS & PERRITANO, LLP**

By: /S/ Maria E. DeLuzio
Maria E. DeLuzio, BBO No. 552924
90 Canal Street
Boston, MA 02114
mdeluzio@piercedavis.com
(617) 350-0950

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on April 9, 2010.

                                /S/ Maria E. DeLuzio
                                _____
                                Maria E. DeLuzio, Esq.